# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUAN ARISTA, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 04 C 4455 |
| v. | ) ) Judge John W. Darrah |
| PANEK PRECISION, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Juan Arista, filed a two-count Complaint against his former employer, Panek Precision, alleging (1) violation of the American with Disabilities Act and (2) retaliation for exercising his rights pursuant to the Illinois Workers' Compensation Act in violation of Illinois public policy. Presently before the Court is Defendant's Motion for Summary Judgment.

## BACKGROUND

Panek manufactures precision components primarily for the automotive industry. (Def.'s 56.1(a)(3) Statement ¶ 6). Panek hired Arista in July 1992 as a second-shift packer. (Id., ¶ 20). In September 1995, Arista was promoted to a Machine Operator in the New Britain Department. (Id., ¶ 21). As a machine operator, Arista was responsible for running the machine and stocking materials. (Id., ¶ 22). In July 1998, Arista received Panek's Employee Manual. (Id., ¶ 7). Panek's policy on equal employment opportunity states:

> Panek Precision will provide equal employment opportunity without regard to race, color, sex, age, disability, religion, national origin, marital status, sexual orientation, ancestry, political belief or activity, or status as a veteran.
>
> \* \* \*
>
> It is the policy of Panek Precision to comply with all the relevant and applicable provisions of the Americans with Disabilities Act (ADA).

> Panek Precision will not discriminate against a qualified applicant or employee with a disability who is able to perform the essential functions of the job with or without a reasonable accommodation, with respect to any of the terms, privileges or conditions of employment because of that person's physical or mental disability.

(Id., ¶ 8). The Employee Manual also explains in two separate places that employment and compensation at Panek is at-will. (Id., ¶ 9). Arista acknowledged his at-will employment by signing the Receipt and Acknowledgment Form of the Employee Manual. (Id., ¶ 10).

Panek also has a Layoff Policy, which states:

> The productivity and quality that each of our employees demonstrate in the daily job is necessary to ensure our business future and provide ongoing orders from our customers. In the unlikely event of a reduction in workforce, employees will be laid off based on skill and abilities as well as seniority. Please understand that if the skills and abilities of two employees are equal, seniority will be the determining factor in the layoff decision.

(Def.'s 56.1(a)(3) Statement ¶ 11). Panek's policy on rehiring former employees states:

> Panek Precision may consider a former employee for re-employment. Eligibility of former employees for possible rehire at Panek Precision is given at the sole discretion of management. Decisions are made on the basis of the skills, abilities, and work record. Such applicants are subject to Panek Precision's usual pre-employment procedures.

(Id., ¶ 12).

Panek trains employees on an "as needed" basis. When Panek needs an individual in an area, it looks for someone who will be compatible for the position. (Def.'s 56.1(a)(3) Statement ¶ 13). Panek provided Arista training on the New Britain machines after he had asked to be trained because there was work available on those machines at the time he made the request. (Id., ¶ 14). Arista never asked for any training on other machines. (Id., ¶ 15).

Al Szablewski is the Panek employee in charge of workers' compensation claims. (Def.'s 56.1(a)(3) Statement ¶ 16). If an employee is injured at work, Szablewski sends the employee to the doctor. A form would then be completed and sent to Panek's workers' compensation insurance carrier, Sentry Insurance. (Id., ¶ 17). If an employee has work restrictions that prevent him or her from lifting, Panek would assign another individual to help the injured employee with the lifting. (Id., ¶ 18). Szablewski decided whether to grant an employee's request for work accommodations. (Id., ¶ 19).

On April 17, 1999, Arista slipped and fell while he was walking to the water fountain at Panek. (Def.'s 56.1(a)(3) Statement ¶ 40). Arista returned to work on July 21, 2000, with a fifty-pound lifting restriction and was placed on light duty pursuant to his restrictions. (Id., ¶ 41). On August 8, 2000, Arista again claimed he was injured when he was rotating a conveyor. (Id., ¶ 42). Arista returned to work on August 9, 2000, with restrictions. Panek honored the restrictions by assigning Arista a helper. (Id., ¶ 43).

Arista saw at least three different physicians for his back injuries – Dr. Robert Levi, Dr. Avi Bernstein, and Dr. Jay Levin. Dr. Levin and Dr. Bernstein released Arista to work without restrictions by November 2000. (Id., ¶ 44). Arista continued to see Dr. Levi., who restricted Arista's lifting over thirty pounds. Dr. Levi cleared Arista to work without restrictions in March 2002. (Id., ¶ 45).

During the relevant times of this lawsuit, Arista worked as a Machine Operator on the New Britain Screw Machines. (Def.'s 56.1(a)(3) Statement ¶ 4). Unlike each of the other individuals in the New Britain Department at the time of his layoff, Arista did not have the ability to work on any production machines other than the New Britain machines. (Id., ¶ 27). Presently, there are

3

only four employees operating New Britain machines. These four employees were performing work on the New Britain machines at the time that Arista was laid off and had more seniority than Arista. (Id., ¶ 34). Panek lost approximately $3 million in sales between 2000 and 2001. (Id., ¶ 32). Panek decided to lay off an employee in the New Britain Machine Department following the decrease in business because that department had lost the most business, and Panek was in the process of losing even more business at the time it made this decision to terminate a second-shift employee in this department. (Id., ¶ 33). Because eleven other employees quit voluntarily, were terminated or retired in 2001, Panek did not have to lay off as many employees following the decrease in business. (Id., ¶ 35).

On April 23, 2001, Arista was laid off from Panek. (Id., ¶ 23). Arista was informed that he was being laid off because there was a lack of work and it was necessary for business reasons. (Def.'s 56.1(a)(3) Statement ¶ 28). Greg Panek, Panek's President, made the final decision to lay off Arista. (Id., ¶ 24). Panek later laid off other employees, including an engineer on May 18, 2001, and a control person on June 12, 2001. (Id., ¶ 37). Neither of the other two employees who were laid off had filed a workers' compensation claim. (Id., ¶ 39). Two other Panek employees who worked on the New Britain machines at the time of Arista's layoff had suffered work-related injuries. (Id., ¶ 47). When Greg Panek made the decision to lay off Arista he did not know that Arista had filed a claim for workers' compensation benefits. (Id., ¶ 25). Greg Panek did know that Arista had suffered two work-related injuries while in Panek's employ and that Arista required some modifications of his work duties because he was restricted in the amount of weight he could lift. (Plaint.'s 56.1(b)(3) Statement ¶¶ 36-37).

4

The decision to lay off Arista was based on: poor business conditions, a significant loss of work performed on the machines Arista operated, Panek's judgment that it should terminate an employee on the second shift as opposed to the first shift, and its judgment that Arista did not have skills equal to the other individuals in his department. (Id., ¶ 26). Arista did not re-apply for employment at Panek after the lay off. (Id., ¶ 31). Amanda Moralez, another Panek employee, has filed two workers' compensation claims, the total payouts for which was more than double the amount of Arista's claims. Moralez is still employed by Panek. (Id., ¶ 48). A few days after he was laid off, Arista called friends who still worked at Panek and learned that no one else had been laid off since his employment ended. (Id., ¶ 31).

In June or July 2001, Arista spoke with someone at the Equal Employment Opportunity Commission about his belief that he was laid off because of his disability. The individual with whom he spoke at the EEOC told Arista that he would have trouble proving his case because it would be his word against the company's. The EEOC employee also informed Arista that if his case went to trial, Arista was going to need money. (Def.'s 56.1(a)(3) Statement ¶ 50). The EEOC did not inform Arista that he could not file a charge of discrimination. (Id., ¶ 51). Arista did not file a discrimination claim with the EEOC at this time. (Id., ¶ 52). At this time, Arista had an attorney who was handling Arista's workers' compensation claim. Arista's workers' compensation claim attorney later provided Arista with contact information for another attorney. (Id., ¶ 53).

On or about August 2, 2003, Arista spoke with this attorney about his possible discrimination claim. On November 7, 2003, Arista filed his charge with the EEOC, alleging disability discrimination. Arista did not indicate why he waited until November 2003 to file his charge even though he had spoken with an attorney in that regard in August 2003. (Def.'s

56.1(a)(3) Statement ¶54). On March 31, 2004, Arista's charge was dismissed by the EEOC as untimely. Arista received the dismissal within a week of March 31, 2004. (Id., ¶ 57). Arista filed his original Complaint on July 7, 2004. (Id., ¶ 58).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

A complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act, and failure to do so renders the charges untimely. See *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999) (*Filipovic*).

Arista filed his charge of discrimination with the EEOC in December 2003, more than two years after the alleged discriminatory act; Arista concedes that this was untimely but argues that the limitations period should be equitably tolled because someone at EEOC implied that he would not have a claim. Arista contends, therefore, that he did not learn that he had a "viable" claim until August 2003, when he spoke with an attorney.

6

Equitable tolling is reserved for [e]xtraordinary circumstances far beyond the litigant's control [that] ... prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Equitable tolling applies when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim. *See Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994). "Equitable tolling requires a court to consider whether a reasonable person in the plaintiff's position would have been aware of the *possibility* that he had suffered an adverse employment action because of illegal discrimination." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 869-61 (7th Cir. 2005) (*Beamon*). Misleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992) (tolling appropriate when EEOC told plaintiff he had completed all necessary paperwork for charge when he had not). However, even if equitable tolling applies, the *plaintiff must still act in a timely and diligent manner* in light of the circumstances of the case. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir. 1990) (emphasis added.)

Here, Arista alleges that an individual with whom he spoke at the EEOC in June or July 2001 told him that he would have trouble proving his case because it would be his word against the company's and that if his case went to trial, Arista was going to need money. Importantly, the individual at the EEOC did not inform Arista that he could not file a charge of discrimination. Furthermore, Arista concedes that in June or July 2001, he knew of the *possibility* that he was laid off because of his disability. Moreover, in 2001, Arista had a workers' compensation attorney who later referred him to a lawyer, with whom he consulted, in August 2003, regarding his claim of discrimination. Arista does not explain why he delayed raising this issue with his workers'

compensation attorney. Nor does he explain why he waited until November 2003 to file his claim after consulting with the second attorney in August 2003.

While the information he received from the EEOC may have been interpreted negatively, it did not prevent him from filing a charge at a time when he believed he may have been discriminated against. *See Beamon*, 411 F.3d at 860-61; *Davis v. Browner*, 113 F. Supp. 2d 1223, 1227 (N.D. Ill. 2000) (tolling not appropriate when clerk's office misinformed plaintiff that she needed a right-to-sue letter because the misinformation did not prevent plaintiff from filing suit). Accordingly, Arista's ADA claim is not equitably tolled and is untimely.

Even if Arista's ADA claim was equitably tolled, that claim still fails.

To establish a *prima facie* case under the ADA, Arista must show that he: (1) is disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the position, either with or without a reasonable accommodation; and (3) suffered an adverse employment action because of his disability. *See Neese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005) (*Neese*). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its employment decision. If the employer succeeds, then the burden shifts back to the plaintiff to show that there is a genuine issue of material fact that the proffered reason for the employment action is pretextual. *See Neese*, 405 F.3d at 641.

A plaintiff must first establish the threshold requirement that he has a disability as defined by the ADA. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (*Hoffman*). Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being or regarded as having such an impairment." 42 U.S.C. § 12102(2).

In his Amended Complaint, Arista alleges that his lower back pain and other medical conditions prevents him from taking part or substantially limits his ability to take part in certain major activities. Other than this unsubstantiated allegation in his Amended Complaint, Arista fails to provide evidence that he was disabled as defined by the ADA and does not even identify which major life activity he is unable to perform. Furthermore, in August 2000, Arista was released to work, with the only restriction of not lifting more than thirty pounds and was released to work without any restrictions in 2002. Arista has failed to demonstrate that he was disabled under the ADA.

In his response brief, Arista argues that even if he did not have a disability as defined by the ADA, Panek regarded him as having such a disability. Arista fails to provide any evidence that he was so perceived as being disabled. Accordingly, Arista has failed to demonstrate a genuine issue of material fact exists as to whether he was disabled under the ADA.

Even if Arista had established that he had a disability as defined by the ADA, he has failed to demonstrate that a genuine issue of material fact exists that the proffered reason for Panek's decision to lay him off was a pretext to discrimination.

A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered

by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396. Furthermore, an employer has no duty to transfer an employee to another position when it reduces its workforce. *Sauzek v. Exxon Coal Inc.*, 202 F.3d 913, 919 (7th Cir. 2000).

Panek's proffered reason for laying off Arista was due to: poor business conditions, a significant loss of work performed on the machines Arista operated, Panek's judgment that it should terminate an employee on the second shift as opposed to the first shift, and its judgment that Arista did not have skills equal to the other individuals in his department. At the same time it was determined that Arista would be laid off, Greg Panek also decided two other employees would be laid off. These two other employees, who did not have any disability, were also laid off. Additional layoffs were not required due to eleven other employee's quitting voluntarily and termination or retirement of other employees. Arista has failed to demonstrate that Panek's stated reasons for his layoff were a lie or a pretense.

To prevail on an Illinois state claim of retaliatory discharge based on filing workers' compensation claims, Arista must demonstrate that: (1) he was employed by Panek before his injury, (2) he exercised his rights under the Workers' Compensation Act, and (3) he was discharged from his employment with a causal connection to his filing a workers' compensation claim. *See Carter v. Tennant Co.*, 383 F.3d 673, 677 (7th Cir. 2004) (*Carter*). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein v. Illinois Power Co.*, 176 Ill. 2d 142, 160 (1992).

As discussed above, Panek has demonstrated a valid basis for Arista's layoff; and Arista has failed to demonstrate that the basis was pretextual. Furthermore, Arista was laid off more than

10

seven months after his workers' compensation claim. Other Panek employees who had been injured on the job and had filed workers' compensation claims were not laid off. Significantly, the decision-maker as to who would be laid off did not know that Arista had filed a workers' compensation claim.

## CONCLUSION

For the foregoing reasons, Panek Precision's Motion for Summary Judgment is granted.

Dated: November 28, 2005

JOHN W. DARRAH
United States District Judge